## Case No. 16,243.

### UNITED STATES v. SCROGGINS.

[Hempst. 478.] [1]

Circuit Court, D. Arkansas. April, 1847.

CRIMINAL LAW—MAIMING—MODE, OR INSTRUMENT USED.

1. To disable or disfigure any limb or member of a person by means of shooting, stabbing, cutting, biting, gouging. or any other means, with intent to maim or disfigure, constitutes an offence under the 13th section of the crimes act of 1790, and is punishable as therein prescribed (1 Stat. 115).

2. The particular mode of effecting this disfiguration or disability, or the particular weapon. or instrument, or means used, are not material, provided the result is maiming or disfiguration with intent so to do.

3. It is not necessary that it should be done by cutting or by the use of some sharp instrument or edged tool. This is one mode, but not the only mode.

Maiming. Indictment that [John W.] Scroggins, a white man, shot James Rawles,

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

[1] [Reported by Samuel H. Hempstead, Esq.]

also a white man, with a rifle gun, in the right arm, with intent to disable and maim.

E. H. English, for defendant, moved to quash the indictment, on the ground that to disable the limb or member of a person by means of shooting, was not embraced by the act of congress. He argued that the act punishing maiming was a literal transcript of the Coventry act, and that the construction of that act in the English courts had been that the maiming or disfiguration must be done with some sharp instrument or edged tool, and that the language of the act seemed to contemplate maiming by means of cutting or stabbing.

S. H. Hempstead, U. S. Dist. Atty., resisted the motion, and contended that the obvious policy of the law was to punish maiming, and that to narrow it down to maiming by cutting or stabbing merely would present a strange anomaly, and would be imputing to the lawmaker the absurdity of attaching a penalty to the means employed rather than the offence itself. Maiming is depriving another of the use of such of his limbs or members as may render him less able in fighting, either to defend himself or annoy his adversary. 4 Bl. Comm. 206; 1 Hawk. P. C. 111. The statute in question among other things, provides in effect, that if any one shall "disable any limb or member of any person with intention in so doing to maim or disfigure." The indictment is founded on this particular part of the statute, and although the maiming was effected by shooting, yet the indictment is believed to be well founded. It would certainly be difficult to assign a sensible distinction between maiming by shooting and cutting; and it cannot be denied that the act of congress is comprehensive enough to embrace a case like this. Gord. Dig., p. 938, art. 3196.

JOHNSON, District Judge. The indictment with requisite particularity of time and place, and by proper averments, charges that the defendant disabled the right arm of James Rawles, a white man, and not an Indian, by means of shooting with intent to maim, and the question is, whether the case is within the purview of the 13th section of the act of 1790, relative to maiming. If it is not, it is conceded that there is no law to punish the offence. I have carefully examined this section upon which the indictment is founded, and entertain no doubt that the motion ought to be overruled. In some parts of that section cutting is contemplated as a mode by which maiming or disfiguration may be effected, but not the only mode; and indeed there could be no reason for confining the offence to that particular mode. Now to "disable the tongue" or "put out an eye" is punishable, but according to the argument of the defendant's counsel, it would not be within the statute unless it was done by cutting, by the use of some sharp instrument or edged tool. The correctness of this position cannot be admitted. No adjudged case has been adduced to sustain it. To disable any limb or member of a person is expressly declared to be an offence, and that is the crime charged in this indictment.

If any person should purposely and maliciously disable the tongue of another by biting, or put out an eye by shooting, striking, gouging, or such like means, or should disable any limb or member of another, by cutting, shooting, or any other means, with intent to maim or disfigure, such person would, undoubtedly, be liable to conviction on this statute. That position is clear enough to my mind. The particular mode of doing it, as by stabbing, cutting, shooting, or striking, or the particular weapon or instrument used, are not material. The real inquiry is, whether a limb or member has been disabled or disfigured purposely and maliciously, and with intent to maim or disfigure; and if so, the offence is complete. This is deemed to be a fair construction of the statute in question, and to give it any other would enable offenders to evade it at pleasure.

It is urged, however, that this section is almost a literal transcript from the statute of 22 and 23 Car. II. c. 1 (Gord. Dig. p. 938, art. 3196; 1 Hawk. P. C. 108), commonly called the "Coventry Act," and that the English courts have put the construction upon it contended for by the defendant's counsel. I can find no case to that effect, nor has any been referred to or produced; and even if there were such cases, I should not feel at all bound by them, for such a construction would, in my judgment, be manifestly absurd, and contrary to the obvious intention of the law. It would be destroying it, by astute construction and unmeaning refinement. It would be carrying technicality much further than it ought to be carried; and it is difficult to perceive any sense or reason in it. Considering this case to be within the act, and the indictment to be good both in form and substance, the motion to quash is overruled, and the defendant ordered to plead to the indictment. Ordered accordingly.

The prisoner was found guilty, and was sentenced to pay a nominal fine and to be imprisoned one year.